IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

MICHAEL JUSTIN PARKINS                                                                    PLAINTIFF
ADC #168018

V.                       Case No. 2:23-CV-00056-BSM-BBM

ROOSEVELT G. BARDEN, Captain,
EARU, ADC                                                                                 DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller ("Judge Miller"). You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On March 13, 2023, Plaintiff Michael Justin Parkins ("Parkins"), a prisoner incarcerated in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated. (Doc. 2). Parkins also filed a Supplement, "Additional Supporting Evidence," and a Notice. (Docs. 3, 4, 6). On November 1, 2023, Judge Miller accepted this Court's recommendation that Parkins be allowed to proceed

with his conditions-of-confinement claims against Captain Roosevelt Barden ("Barden") and Sergeant J.J. Sykes ("Sykes"), in their individual capacities only, for conduct that occurred in June 2020. (Docs. 8, 9). Specifically, Parkins's claims are based on allegations that Barden and Sykes placed him in a small cage for two days without clothes or adequate bathroom breaks. (Doc. 2 at 2–3). At the screening stage, all other claims and Defendants were dismissed. (Docs. 8, 9).

After Barden's Motion to Dismiss was denied, (*see* Docs. 15–16, 22, 31, 34), Barden filed an Answer on May 21, 2024, (Doc. 37). Parkins's claims against Sykes were dismissed without prejudice on September 23, 2024, due to lack of service. (Docs. 52, 54). Thereafter, on October 7, 2024, Barden filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts, arguing that Parkins failed to exhaust his administrative remedies. (Docs. 55–57).

On October 28, 2024, Parkins filed a document titled, "Response Summary Judgement Declaration in Opposition to Defendants Motion for Summary Judgement."[1] (Doc. 59 at 1) (errors in original). For ease of analysis, throughout this Recommendation, the Court refers to this document as "Parkins's Response." Barden filed a Reply on November 4, 2024. (Doc. 60). Thus, the issues are properly joined and ready for consideration. For the following reasons, the Court recommends that Barden's Motion for Summary Judgment, (Doc. 55), be granted.

---

[1] The Court corrects any capitalization errors in Parkins's writing internally and without brackets.

## II. DISCUSSION

### A. Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies prior to filing a § 1983 action. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019). In order to do so, prisoners must fully and properly exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action and complete the exhaustion process *before* initiating the § 1983 action. *Jones v. Bock*, 549 U.S. 199, 211, 219–20, 223–24 (2007); *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton*, 752 F.3d 1136, 1141–42 (8th Cir. 2014); *Johnson v. Jones*, 340 F.3d 624, 626–28 (8th Cir. 2003) ("Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court…If exhaustion was not completed at the time of filing, dismissal is mandatory.") (emphasis in original). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90. Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly bring a claim in a § 1983 action.

The PLRA, however, "requires exhaustion of only 'such administrative remedies as are available.'" *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (quoting 42 U.S.C. § 1997e(a)). And a court must determine whether administrative remedies were unavailable *before* determining that failure to exhaust remedies bars a prisoner's lawsuit. *Smith v. Andrews*, 75 F.4th 805, 808–09 (8th Cir. 2023). For a remedy to be available, it must be

3

capable of use to obtain some relief. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (cleaned up). An administrative remedy is not capable of use where: (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it; and (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. *Id.* at 643–44.

### B. ADC Administrative Directive 19-34

The ADC provides a three-step grievance procedure for prisoners to exhaust their administrative remedies, Administrative Directive 19-34 ("AD 19-34"). (Doc. 57-1). First, the prisoner must file a "Step One" informal resolution within fifteen days of each incident. AD 19-34 at § IV(E). The prisoner may only raise one issue in the Step One informal resolution and must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses." AD 19-34 at § IV(D)(2), (E). The prisoner should receive a response within three working days; but, if no response is received, the prisoner may proceed directly to Step Two. *Id.* at § IV(E)(11).

At "Step Two," the prisoner submits a formal unit-level grievance. *Id.* at § IV(F). The Step Two grievance must contain "an explanation [of] why the inmate considers the informal resolution unsuccessful." *Id.* at § IV(F)(1). Notably, the prisoner may not raise new issues in his formal grievance, and issues not raised in Step One will not be considered at Step Two. *Id.* at § IV(F)(2). If the prisoner does not receive a response to their Step Two grievance within five working days, the prisoner may move to Step Three. *Id.* at § IV(F)(4), (9).

4

The prisoner must file a "Step Three" appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Step Two decision. *Id.* at § IV(G). At Step Three, the prisoner must "state a reason for the appeal." *Id.* at § IV(G)(2). The grievance procedure cautions prisoners that they should "not list additional issues, requests, or names which were not part of the original grievance, as those issues will not be addressed." *Id.*

### C.    Barden's Motion for Summary Judgment[2]

In support of his Motion for Summary Judgment, Barden attaches the Declaration of Terri Grigsby-Brown ("Grigsby-Brown"), the ADC's Inmate Grievance Supervisor. (Doc. 57-2). According to Grigsby-Brown, she reviewed Parkins's grievance file for any grievance related to his remaining claim against Barden. *Id.* at 5, ¶¶ 26–27. Grigsby-Brown attests that, according to the ADC grievance records, Parkins submitted no Step Two appeals in 2020. *Id.* at 5, ¶ 28. For that reason, Grigsby-Brown asserts that, from June 2020 to the date he filed his lawsuit, March 13, 2023, "Parkins did not timely file, appeal, and exhaust any grievance relating to his June 2020 allegation against [] Barden." *Id.* at 5, ¶ 29.

---

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

### D. Parkins's Response

Parkins did not respond to Barden's Statement of Facts, (Doc. 57). Instead, Parkins filed a "Statement of Disputed Factual Issues," claiming, essentially, that the grievance process was unavailable to him. (Doc. 59 at 2). Specifically, Parkins claims that he awoke on June 30, 2020, to "find grievance [sic] to include all carbon copies…[and] blue copies designed for grievance officer still attached, uncompleted[,] thus dening [sic] the grievance process[.]" *Id.* To support his argument, Parkins points to grievance documents he attached as evidence to previous filings. *Id.* (citing Doc. 4 at 7, 10). The cited documents include two Unit Level Grievance Forms *without* a completed Step Two appeal. (Doc. 4 at 7, 10).

### E. Barden's Reply

In his Reply, Barden points out that neither of the grievance documents referenced by Parkins include a completed appeal section. (Doc. 60 at 2, ¶ 6). Additionally, Barden states:

> Plaintiff only alleged that he was denied the grievance process on June 27, 28, and 29 of 2020. Plaintiff did not claim that he tried to grieve once he was moved to a barracks on June 29, 2020, when he was placed on DCR and/or began serving his disciplinary sentence. He had 15 days to grieve after the incident and after his move, but he failed to do so…. Further, neither of plaintiff's unexhausted informal resolutions identify Defendant Barden.

*Id.* at 3, ¶¶ 8–9.

### F. Availability of the Grievance Process

The Court first must determine whether administrative remedies were available *before* determining whether any failure to exhaust remedies bars a prisoner's lawsuit. *Smith*, 75 F.4th at 808 (noting that the PLRA's available remedy requirement is a textual exception to mandatory exhaustion and that "the PLRA provides a threshold question that

6

the district court *must* answer before proceeding: What remedies were *available* to [the prisoner/plaintiff]"). For the reasons set forth below, the Court finds no genuine issue of material fact regarding the availability of the grievance process.

From its review of the entire record, the Court found two relevant Step One grievance documents submitted by Parkins, both dated June 29, 2020. (Doc. 4 at 6–11). Parkins claims that these grievance documents, "to include all carbon copies," were later returned to him, "uncompleted." (Doc. 59 at 2). The Court notes, however, that both of the relevant grievance documents include a Step-One response from non-party Deputy Warden Anthony Jackson. (Doc. 4 at 6, 9). None of the relevant grievance documents submitted by Parkins, however, reflect an appeal to Step Two, as required by the ADC grievance procedure. (Doc. 4 at 6–11; Doc. 59 at 6; AD 19-34 at § IV)(E)(11)). In fact, on both of the relevant grievance forms offered by Parkins, the space provided at the top of the Unit Level Grievance Form to: (1) date the appeal to Step Two; and (2) explain why the issue was not resolved at Step One, is blank. (Doc. 4 at 6–11; Doc. 59 at 6).

Parkins offers no explanation for why he failed to appeal his grievances to Step Two and offers no argument that he was prevented from doing so. Parkins simply contends that the grievance process was "unavailable and not followed properly" because his Step One grievances were returned to him with all carbon copies attached. (Doc. 59 at 2–3). On this record, therefore, Parkins has not shown that administrative remedies were unavailable to him. To the contrary—Parkins has shown that he did not avail himself of the Step Two remedy.

To the extent Parkins argues that the problem solvers did not follow the grievance procedure, (Doc. 59 at 3), the actions of the problem solvers did not render the process unavailable to Parkins, who could have appealed their response—or lack thereof—to the next level (Step Two). (Doc. 57-1 at § IV(E)(11)). The Court finds that the administrative process was available to Parkins.

### G. Parkins's Relevant Grievances

Parkins does not contest any of Barden's factual assertions—supported by the record, (Doc. 57-2 at 5, ¶¶ 26–29, 6–7)—regarding Parkins's failure to appeal his relevant grievances through all three steps of the grievance procedure. And Parkins's own submissions support the Court's finding that Parkins failed to appeal his June 29, 2020 grievances to Step Two. Because Parkins failed to utilize the available grievance process, he, thereby, failed to exhaust his available administrative remedies, as required by the PLRA. Accordingly, there is no genuine issue of material fact; Barden's Motion for Summary Judgment should be granted; and Parkins's Complaint should be dismissed without prejudice for failure to exhaust administrative remedies.

## III. CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1. Parkins's conditions-of-confinement claim against Barden in his individual capacity be DISMISSED without prejudice for failure to exhaust administrative remedies.

2. Judgment be entered accordingly.

DATED this 24th day of April, 2025.

                                                                               */s/ Benecia Moore*
                                                         UNITED STATES MAGISTRATE JUDGE

Case 2:23-cv-00056-BSM Document 61 Filed 04/24/25 Page 9 of 9